**HUNTER PYLE, SBN 191125**
**DANIEL BROME, SBN 278915**
HUNTER PYLE LAW, PC
505 14th Street, Suite 600
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile:  (510) 444-4410
Emails: hunter@hunterpylelaw.com;
        dbrome@hunterpylelaw.com


**AUSTIN KAPLAN, TX BAR NO. *24072176**
THE KAPLAN LAW FIRM, PLLC
2901 Bee Cave Rd., Suite G
Austin, TX 78746
Telephone: (512) 843-5572
Facsimile: (512) 692-2788
Email: akaplan@kaplanlawtx.com

*Pro hac vice* application forthcoming

Attorneys for Plaintiff SHRUTI MANGALMURTI

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHRUTI MANGALMURTI,<br><br>        Plaintiff,<br><br>    vs.<br><br>SYNOPSYS, INC.<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>1.  **SEX DISCRIMINATION (42 U.S.C. § 2000e et seq.);**<br>2.  **RACE DISCRIMINATION (42 U.S.C. § 2000e et seq.);**<br>3.  **SEX AND RACE HARASSMENT (42 U.S.C. § 2000e et seq.);**<br>4.  **RETALIATION (42 U.S.C. § 2000e et seq.);**<br>5.  **RACE DISCRIMINATION (42 U.S.C. § 1981);**<br>6.  **SEX DISCRIMINATION (Cal. Gov't Code § 12940(a));**<br>7.  **RACE DISCRIMINATION (FEHA, Cal. Gov't Code § 12940(a));**<br>8.  **SEX AND RACE HARASSMENT (FEHA, Cal. Gov't Code § 12940(j));** |

9.  RETALIATION (FEHA, Cal. Gov't Code § 12940(h));
10. FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION (FEHA, Cal. Gov't Code § 12940(k)) and;
11. RETALIATION (Cal. Gov't Code § 12945.7).

**DEMAND FOR JURY TRIAL**

Plaintiff SHRUTI MANGALMURTI ("Plaintiff"), by and through her attorneys, brings this Complaint against Defendant SYNOPSYS, INC. ("Defendant") and alleges as follows:

## I.    INTRODUCTION

1.    This is a civil action for damages arising from Defendant's unlawful employment discrimination, harassment, hostile work environment, and retaliation against Plaintiff based on her sex and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the California Fair Employment and Housing Act. Plaintiff was a high-performing Executive Account Manager who repeatedly exceeded her sales quotas, yet faced continuous harassment and discrimination from her supervisors because she is a woman of Indian descent. After Plaintiff reported the discriminatory treatment to Human Resources multiple times, Defendant retaliated against her by removing key accounts from her portfolio and ultimately terminating her employment. Defendant further retaliated against Plaintiff for exercising her rights under the California Family Rights Act by terminating her employment shortly after she took bereavement leave following her mother's death.

## II.    PARTIES

2.    Plaintiff Shruti Mangalmurti is an individual residing in the State of Texas. At all times relevant to this Complaint, Plaintiff was an employee of Defendant Synopsys, Inc.

3.    Defendant Synopsys, Inc. is a Delaware corporation with its principal place of business located at 675 Almanor Avenue, Sunnyvale, California 94085. At all times relevant to this Complaint, Defendant employed Plaintiff and has continuously employed fifteen or more employees within the State of California and within this judicial district. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), 42 U.S.C. § 1981, and the California Fair Employment and Housing Act, California Government Code section 12940 et seq.

## III.    JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

1

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

5.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts substantial business in this District, the events giving rise to this action occurred in this District, and Defendant is subject to personal jurisdiction in this District.

7.    Plaintiff has exhausted all applicable administrative remedies. Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission and the California Civil Rights Department. Plaintiff received a Right to Sue letter from the EEOC, and this action is filed within ninety days of receipt of that letter.

## IV.    FACTUAL ALLEGATIONS

**Plaintiff's Employment and Exemplary Performance**

8.    Plaintiff began working for Defendant as an Executive Account Manager in 2021. In this role, Plaintiff was responsible for managing multimillion-dollar accounts with global semiconductor customers.

9.    Throughout her employment with Defendant, Plaintiff consistently demonstrated exceptional performance in her position. She exceeded her sales quota for both fiscal year 2022 and fiscal year 2023.

10.    By mid-year of fiscal year 2024, Plaintiff had already achieved over one hundred percent of her quota and was on track to finish the year at over one hundred fifty percent of her planned targets.

11.    During her entire tenure at Synopsys, Plaintiff never received any formal disciplinary write-ups or negative performance reviews.

12.    Plaintiff's outstanding performance is further evidenced by her work on the Texas Instruments account. When Plaintiff took over the Texas Instruments account in 2022, the account had declined from multi-millions of dollars of annual spend to only two to three million dollars per year under the management of Sales Director Sanjay Mehdiratta and Executive Account Manager Roger

**2**

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Saras. Through her skill in building credible relationships and effective communication, Plaintiff grew the Texas Instruments account to over one hundred million dollars of spend in 2023.

**Pervasive Gender and Race Discrimination**

13.    Despite her stellar performance, Plaintiff faced continuous harassment, discrimination, and disparate treatment at the hands of her Sales Director Sanjay Mehdiratta and her manager Sonia Mukherjee.

14.    Early in her career at Synopsys, Plaintiff learned that pervasive gender discrimination was perpetuated by male employees in sales management, including Mehdiratta.

15.    Mehdiratta consistently displayed harsh and condescending treatment toward female employees, particularly targeting women of Indian descent.

16.    Multiple female employees at Synopsys reported experiencing discriminatory treatment from Mehdiratta.

17.    Mehdiratta appeared to hold the viewpoint that Indian women are people who constantly need to be told what to do and how to do it. This discriminatory viewpoint was shared by many men at Synopsys.

18.    Plaintiff was subjected to multiple inappropriate comments in the workplace related to her gender and her role as a mother. Male coworkers, including Applications Engineering Director Balaji Velikandanathan and Hardware Sales Manager Naveen Naidu, made comments asking who takes care of her children when she travels for work and who makes her husband breakfast when she attends early morning meetings.

19.    These comments reflected an assumption that Plaintiff, as a woman, should be primarily responsible for domestic duties and childcare, and that her professional responsibilities were somehow inconsistent with traditional gender roles.

20.    Despite the discriminatory nature of this behavior, Mehdiratta faced no consequences due to his long tenure at Synopsys.

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Escalating Harassment and Hostile Work Environment**

21.    On May 8, 2023, Mehdiratta's typical condescending behavior escalated into overt aggression directed at Plaintiff. During a one-on-one meeting to discuss access rates, Mehdiratta began yelling at Plaintiff to the point that it made her fearful for her safety.

22.    Following this incident, Plaintiff immediately emailed Defendant's Human Resources department to report that Mehdiratta's reaction was "scary."

23.    After this incident, Mehdiratta's aggressive behavior became the new normal for Plaintiff's interactions with him. Over the course of the next two months, Plaintiff had multiple interactions with Mehdiratta where his behavior was unprofessional and aggressive.

24.    Plaintiff and other employees observed that Mehdiratta's aggressive behavior was primarily targeted at women employees.

25.    Mehdiratta would aggressively critique and second-guess Plaintiff's work, yet would not subject her male counterparts to the same level of scrutiny or criticism.

26.    In an effort to remedy the situation, Plaintiff participated in a conflict management meeting with Mehdiratta in June 2023. This meeting appeared to briefly improve Mehdiratta's behavior toward Plaintiff.

27.    However, shortly after the conflict management meeting, Mehdiratta set up a one-on-one meeting with Plaintiff for the purpose of lecturing her about the tone of her emails.

28.    Mehdiratta began using phrases such as "I am your boss's boss" to remind Plaintiff of her subordinate position in the company hierarchy.

**Plaintiff's First Formal Complaint to Human Resources**

29.    Concerned about Mehdiratta's unchanged discriminatory and harassing behavior, Plaintiff reported her experiences to Elaine Yang in Defendant's Human Resources department on August 21, 2023.

30.    In her report to Human Resources, Plaintiff provided a detailed timeline of Mehdiratta's behavior and expressed her concerns about the hostile work environment he had created.

31.     Plaintiff explicitly informed Human Resources that she feared retaliation from Mehdiratta, specifically stating that she feared he would take accounts away from her. Plaintiff wrote: "I fear he may retaliate with taking away the accounts I love working with or something else."

**Continued Harassment Despite Reporting**

32.     Despite Plaintiff's formal complaint to Human Resources, Defendant took no effective action to stop Mehdiratta's discriminatory and harassing behavior.

33.     Mehdiratta continued to second-guess Plaintiff's actions, claim that she lacked basic knowledge, and yell at her during business interactions.

34.     On a Friday evening at approximately 7:00 p.m., Mehdiratta screamed at Plaintiff during a work call.

**Plaintiff's Second Complaint and Request for Transfer**

35.     Observing no changes in Mehdiratta's behavior and no accountability from Defendant despite her prior complaint, Plaintiff reached out to Human Resources again on November 20, 2023.

36.     In this communication with Elaine Yang, Plaintiff provided an update on the deteriorating situation with Mehdiratta and requested to be moved to a different reporting chain.

37.     Plaintiff emphasized that the working environment with Mehdiratta was untenable and was causing her significant stress, anxiety, and loss of sleep.

38.     Plaintiff informed Human Resources that Mehdiratta's management style was "unhealthy for my work, my career, and my personal life."

**Gender Discrimination in Career Advancement Opportunities**

39.     In addition to the hostile work environment created by Mehdiratta's behavior, Plaintiff was also subjected to discriminatory treatment with respect to recognition, rewards, and career advancement opportunities.

40.     Of the three employees reporting to manager Sonia Mukherjee, which group consisted of Plaintiff and two male employees, only Plaintiff's male colleagues were invited to attend a Diamond Club award trip in Hawaii.

5

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

41. Plaintiff was excluded from this recognition event despite being a higher performer than both of her male colleagues.

42. Attendance at the Diamond Club event is based on quota achievement, and decisions regarding quota achievement and replanning are made by sales management.

43. Mehdiratta specifically manipulated the narrative regarding Texas Instruments quota achievement for fiscal year 2023 to ensure that it appeared Plaintiff had not met the threshold for Diamond Club attendance.

44. When Plaintiff reported this gender discrimination to Human Resources on February 16, 2024, she informed them that Defendant sent her male comparators Jim and Roger to Diamond Club while excluding her, even though she was the same or a better performer than these male colleagues.

45. Plaintiff also reported to Human Resources that Mehdiratta had failed to promote her or provide her with opportunities for advancement, while male employees with similar or lesser performance received such opportunities.

46. In an email dated February 16, 2024, Elaine Yang from Human Resources acknowledged Plaintiff's concerns, writing: "Next steps: we will continue to discuss the following concerns: whether Sanjay is retaliating, promotion to director."

47. Despite this acknowledgment from Human Resources, Defendant never followed through on its investigation of whether Mehdiratta was retaliating against Plaintiff or on addressing the issues related to her promotion to director.

**Defendant's Inadequate Response and Unfulfilled Promises**

48. In response to Plaintiff's repeated complaints of discrimination and mistreatment, Human Resources informed Plaintiff that there would be some sort of mediation process to improve the working relationship between Plaintiff, Mehdiratta, and Mukherjee, also involving Phanesh Jannapareddi (Mehdiratta's manager, who was based in California).

49. On February 16, 2024, Plaintiff expressed concern about the mediation process to Human Resources and Jannapareddi, noting that the process consisted only of Human Resources asking Plaintiff for more examples of her mistreatment rather than taking any corrective action.

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

50.    Plaintiff began to worry that because she was continuing to provide these examples of discrimination and harassment at Human Resources' and Jannapareddi's request, she would face further retaliation from Mehdiratta and Mukherjee.

51.    Despite promising a mediation process to address Plaintiff's complaints, Defendant's Human Resources department and Jannapareddi never offered any effective avenue to protect Plaintiff from ongoing discrimination and harassment.

52.    Defendant never followed through on its promise of mediation between Plaintiff and her supervisors.

**First Act of Retaliation: Removal of Key Accounts**

53.    Plaintiff's fears of retaliation, which she had explicitly expressed to Human Resources in August 2023, soon materialized.

54.    In December 2023, Mehdiratta, with the support and cooperation of Mukherjee, attempted to remove both the TEL and Tesla accounts from Plaintiff's portfolio.

55.    The TEL account was officially removed from Plaintiff's plan despite her objections.

56.    The Tesla account remained in Plaintiff's portfolio only because Tesla Strategic Account Manager Andy Biddle pushed back aggressively against its removal.

57.    Although the TEL account was removed from Plaintiff's plan, she was told to continue supporting the account, which she did.

58.    The removal of the TEL account from Plaintiff's plan constituted retaliation for her reports of discrimination and harassment, as it directly fulfilled the fear of retaliation that Plaintiff had expressed to Human Resources in August 2023.

**Plaintiff's Protected Leave**

59.    While Human Resources purported to continue its investigation of Plaintiff's complaints, Plaintiff continued to face mistreatment from Mehdiratta and Mukherjee.

60.    During this time, Plaintiff's mother's health significantly deteriorated.

61.    On April 5, 2024, Plaintiff took leave from work and traveled to India to be with her family during her mother's medical crisis. She returned to work on April 27, 2024.

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

62. Shortly after returning from this leave, Plaintiff's mother's condition worsened further.

63. Plaintiff traveled back to India and took bereavement leave from May 1 through May 5, 2024, following the death of her mother.

64. Plaintiff's bereavement leave was protected under the California Family Rights Act, which requires employers to provide up to five days of bereavement leave and prohibits discrimination or retaliation against employees who exercise this right.

**Retaliation Following Protected Leave**

65. When Plaintiff returned to work following her bereavement leave after her mother's death, she faced criticism from Mukherjee about not having their regular one-on-one meetings and about her purported lack of communication while she was on protected leave.

66. Despite Plaintiff's emotional state following the loss of her mother, Mehdiratta's harsh and discriminatory treatment of Plaintiff actually worsened after her return from bereavement leave.

67. While Plaintiff was dealing with the ongoing discrimination and harassment and grieving the loss of her mother, Mehdiratta, Mukherjee, and Jannapareddi were working behind the scenes to orchestrate her termination. They presented a false narrative about Plaintiff's behavior and performance to Human Resources, and built a case to have Plaintiff fired.

**Plaintiff's Unlawful Termination**

68. On June 18, 2024, approximately six weeks after Plaintiff returned from bereavement leave following her mother's death, Defendant terminated Plaintiff's employment.

69. Plaintiff's termination occurred without any prior warnings, Performance Improvement Plans, or disciplinary write-ups.

70. Plaintiff's termination occurred despite the fact that she had exceeded her sales quota for 2022 and 2023, and was on track to exceed one hundred fifty percent of her quota for 2024.

71. Plaintiff's termination occurred approximately one month after she exercised her legal right to take bereavement leave under the California Family Rights Act.

72. Plaintiff's termination occurred after she had made multiple complaints to Human Resources about gender and race discrimination, harassment, and a hostile work environment.

73. The temporal proximity between Plaintiff's protected complaints and her protected leave on one hand, and her termination on the other hand, demonstrates that her termination was retaliatory.

74. Instead of addressing Plaintiff's legitimate complaints of discrimination and harassment by holding Mehdiratta and Mukherjee accountable, reorganizing the reporting structure, offering Plaintiff the opportunity to transfer to a different role, or implementing the promised mediation process, Defendant terminated Plaintiff.

75. Defendant's proffered reason for terminating Plaintiff was that she was allegedly a poor communicator. This reason is pretextual.

76. The facts demonstrate that Plaintiff was an excellent communicator. The decline of the Texas Instruments account under Mehdiratta's management was due in significant part to Mehdiratta's poor communication skills and his condescending treatment of customer contacts. Key decision-makers at Texas Instruments did not want to work with Mehdiratta because of his communication style. When Plaintiff took over the account in 2022, she rebuilt the relationships and grew the account to over one hundred million dollars of spend in 2023 through her superior communication skills and ability to build credible, trusted relationships.

77. Plaintiff had to work around Mehdiratta's poor communication skills and condescending behavior in order to win business for Defendant.

78. The true reasons for Plaintiff's termination were her gender, her race, her complaints about discrimination and harassment, and her exercise of her right to take protected family and bereavement leave.

**Pattern and Practice of Retaliation**

79. The retaliation faced by Plaintiff after reporting Mehdiratta's harassment and discrimination appears to be a pattern within this group at Synopsys.

80. Upon information and belief, another sales director at Synopsys who publicly expressed negative opinions about Mehdiratta's management style was subsequently terminated by Mehdiratta after fifteen years of employment with Defendant.

9

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

81.    Upon information and belief, an administrative employee at Synopsys decided to leave the company after eight years of employment due to ongoing harassment by Mehdiratta and Mukherjee.

82.    Upon information and belief, there are many more instances of employees who faced retaliation after reporting discrimination or harassment by Mehdiratta and Mukherjee, which combined will show a pattern and practice of retaliation by Defendant.

**Damages**

83.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer significant damages, including but not limited to lost wages, lost benefits, lost future earnings, emotional distress, humiliation, anxiety, loss of sleep, and damage to her professional reputation and career prospects.

84.    Plaintiff's termination has severely impacted her ability to find comparable employment. The specialized nature of managing multimillion-dollar businesses with global semiconductor customers means that there are very limited opportunities in the industry.

85.    The semiconductor technology sales industry is highly specialized, with only a few major companies. Positions in this field are not obtained through standard interviews but can take many months or even years to fill after considering organizational needs and verifying references from former employers and customers.

86.    The circumstances of Plaintiff's termination have damaged her credibility and "rehire-ability" in the semiconductor technology sales industry. When a high-performing salesperson is suddenly terminated without explanation, potential employers in the industry often assume the person engaged in unethical conduct.

87.    Defendant's discriminatory, harassing, and retaliatory conduct was willful, intentional, malicious, and done with reckless indifference to Plaintiff's federally and state-protected rights, thereby entitling Plaintiff to punitive damages.

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964
(42 U.S.C. § 2000e et seq.)
(Against Defendant)**

88.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

89.    At all times relevant to this Complaint, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

90.    At all times relevant to this Complaint, Plaintiff was an employee within the meaning of Title VII.

91.    Defendant subjected Plaintiff to unlawful sex discrimination by treating her differently than similarly situated male employees with respect to the terms and conditions of her employment, including but not limited to subjecting her to heightened scrutiny of her work, excluding her from recognition and reward opportunities such as the Diamond Club trip, denying her promotion opportunities, removing key accounts from her portfolio, and ultimately terminating her employment.

92.    Defendant subjected Plaintiff to discriminatory comments and assumptions about her responsibilities as a woman and mother, including comments about who takes care of her children when she travels and who makes her husband breakfast when she has early morning meetings.

93.    Plaintiff's male colleagues who were similarly situated or lower-performing than Plaintiff were not subjected to this discriminatory treatment and were instead rewarded with opportunities such as the Diamond Club trip and promotions.

94.    Plaintiff's sex was a motivating factor in Defendant's adverse employment actions against her.

95.    As a direct and proximate result of Defendant's unlawful sex discrimination, Plaintiff has suffered and continues to suffer damages as set forth above.

96.    Defendant's conduct was willful, intentional, and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

11

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## SECOND CAUSE OF ACTION
**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964,**
**(42 U.S.C. § 2000e et seq.)**
**(Against Defendant)**

97.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

98.     At all times relevant to this Complaint, Defendant was an employer within the meaning of Title VII.

99.     At all times relevant to this Complaint, Plaintiff was an employee within the meaning of Title VII.

100.     Defendant subjected Plaintiff to unlawful race discrimination by treating her differently than similarly situated employees of different races with respect to the terms and conditions of her employment.

101.     Mehdiratta specifically targeted women of Indian descent, including Plaintiff, for harsh and condescending treatment based on discriminatory views about Indian women.

102.     Mehdiratta appeared to hold the viewpoint that Indian women are people who constantly need to be told what to do and how to do it, and he treated Plaintiff in accordance with this discriminatory stereotype.

103.     Plaintiff's race was a motivating factor in Defendant's adverse employment actions against her, including the harassment she endured, the exclusion from recognition opportunities, the removal of accounts, and her ultimate termination.

104.     As a direct and proximate result of Defendant's unlawful race discrimination, Plaintiff has suffered and continues to suffer damages as set forth above.

105.     Defendant's conduct was willful, intentional, and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

## THIRD CAUSE OF ACTION
**Sex and Race Harassment in Violation of Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. § 2000e et seq.)**
**(Against Defendant)**

106.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**12**

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

107.    At all times relevant to this Complaint, Defendant was an employer within the meaning of Title VII.

108.    At all times relevant to this Complaint, Plaintiff was an employee within the meaning of Title VII.

109.    Defendant, through its supervisors and agents Mehdiratta and Mukherjee, subjected Plaintiff to severe and pervasive harassment based on her sex and race.

110.    The harassment included yelling at Plaintiff to the point that she feared for her safety, making discriminatory comments about her domestic and childcare responsibilities as a woman, subjecting her to condescending treatment based on stereotypes about Indian women, constantly second-guessing her work while not doing the same to male employees, and creating an atmosphere of intimidation through statements such as "I am your boss's boss."

111.    The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

112.    The harassment was unwelcome.

113.    Plaintiff communicated to Defendant through its Human Resources department that the harassment was unwelcome and requested that it stop, but Defendant failed to take effective action to remedy the situation.

114.    A reasonable person in Plaintiff's position would have found the work environment to be hostile and abusive.

115.    The harassment was based on Plaintiff's sex and race.

116.    Defendant knew or should have known about the harassment and failed to take prompt and appropriate corrective action.

117.    As a direct and proximate result of Defendant's failure to prevent and remedy the hostile work environment, Plaintiff has suffered and continues to suffer damages as set forth above.

118.    Defendant's conduct was willful, intentional, and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

13

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## FOURTH CAUSE OF ACTION
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. § 2000e et seq.)**
**(Against Defendant)**

119.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

120.    At all times relevant to this Complaint, Defendant was an employer within the meaning of Title VII.

121.    At all times relevant to this Complaint, Plaintiff was an employee within the meaning of Title VII.

122.    Plaintiff engaged in protected activity by complaining to Defendant's Human Resources department about sex and race discrimination, harassment, and hostile work environment on multiple occasions, including on May 8, 2023, August 21, 2023, November 20, 2023, and February 16, 2024.

123.    Defendant was aware of Plaintiff's protected activity.

124.    Following Plaintiff's protected complaints, Defendant took materially adverse actions against Plaintiff, including removing the TEL account from her portfolio in December 2023 and terminating her employment on June 18, 2024.

125.    There is a causal connection between Plaintiff's protected activity and the adverse employment actions taken against her, as demonstrated by the temporal proximity between her complaints and the adverse actions, Defendant's failure to address her complaints, and the pretextual nature of Defendant's stated reasons for the adverse actions.

126.    Plaintiff explicitly told Human Resources in August 2023 that she feared Mehdiratta would retaliate by taking accounts away from her, and this retaliation occurred in December 2023.

127.    As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages as set forth above.

128.    Defendant's conduct was willful, intentional, and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

14

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## FIFTH CAUSE OF ACTION
### Race Discrimination
### (42 U.S.C. § 1981)
### (Against Defendant)

129.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

130.  At all times relevant to this Complaint, Plaintiff had the right to make and enforce contracts, including her employment contract with Defendant, without discrimination based on race, as guaranteed by 42 U.S.C. § 1981.

131.  Defendant intentionally discriminated against Plaintiff on the basis of her race by subjecting her to disparate treatment, harassment, and ultimately terminating her employment based on discriminatory views about Indian women.

132.  Defendant's discriminatory conduct impaired Plaintiff's right to make and enforce her employment contract on the same basis as white employees.

133.  Defendant's discriminatory conduct was intentional.

134.  As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer damages as set forth above.

135.  Defendant's conduct was willful, intentional, and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

## SIXTH CAUSE OF ACTION
### Sex Discrimination in Violation of the California Fair Employment and Housing Act
### (Cal. Gov't Code § 12940(a))
### (Against Defendant)

136.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

137.  At all times relevant to this Complaint, Defendant was an employer within the meaning of the California Fair Employment and Housing Act, California Government Code section 12940 et seq.

138.  At all times relevant to this Complaint, Plaintiff was an employee within the meaning of the Fair Employment and Housing Act.

139.    Defendant subjected Plaintiff to unlawful sex discrimination in violation of California Government Code section 12940(a) by treating her differently than similarly situated male employees with respect to the terms and conditions of her employment.

140.    Plaintiff's sex was a substantial motivating factor in Defendant's adverse employment actions against her, including subjecting her to heightened scrutiny, excluding her from recognition opportunities, removing accounts from her portfolio, and terminating her employment.

141.    As a direct and proximate result of Defendant's unlawful sex discrimination, Plaintiff has suffered and continues to suffer damages as set forth above, including emotional distress.

142.    Defendant's conduct was willful, intentional, malicious, fraudulent, and undertaken with oppression or reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages under California Civil Code section 3294.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

### SEVENTH CAUSE OF ACTION
**Race Discrimination in Violation of the California Fair Employment and Housing Act**
**(Cal. Gov't Code § 12940(a))**
**(Against Defendant)**

143.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

144.    At all times relevant to this Complaint, Defendant was an employer within the meaning of the Fair Employment and Housing Act.

145.    At all times relevant to this Complaint, Plaintiff was an employee within the meaning of the Fair Employment and Housing Act.

146.    Defendant subjected Plaintiff to unlawful race discrimination in violation of California Government Code section 12940(a) by treating her differently than similarly situated employees of different races with respect to the terms and conditions of her employment.

147.    Plaintiff's race and ethnicity as a woman of Indian descent was a substantial motivating factor in Defendant's adverse employment actions against her, including the harassment and disparate treatment she endured and her ultimate termination.

148.    As a direct and proximate result of Defendant's unlawful race discrimination, Plaintiff has suffered and continues to suffer damages as set forth above, including emotional distress.

16

149. Defendant's conduct was willful, intentional, malicious, fraudulent, and undertaken with oppression or reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages under California Civil Code section 3294.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

## EIGHTH CAUSE OF ACTION
**Sex and Race Harassment in Violation of the California Fair Employment and Housing Act**
**(Cal. Gov't Code § 12940(j))**
**(Against Defendant)**

150. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

151. At all times relevant to this Complaint, Defendant was an employer within the meaning of the Fair Employment and Housing Act.

152. At all times relevant to this Complaint, Plaintiff was an employee within the meaning of the Fair Employment and Housing Act.

153. Defendant, through its supervisors and agents Mehdiratta and Mukherjee, subjected Plaintiff to severe and pervasive harassment based on her sex and race in violation of California Government Code section 12940(j).

154. The harassment was unwelcome and created a hostile work environment that interfered with Plaintiff's ability to perform her job.

155. Defendant knew or should have known about the harassment and failed to take immediate and appropriate corrective action.

156. As a direct and proximate result of Defendant's failure to prevent and remedy the harassment, Plaintiff has suffered and continues to suffer damages as set forth above, including severe emotional distress.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

## NINTH CAUSE OF ACTION
**Retaliation in Violation of the California Fair Employment and Housing Act**
**(Cal. Gov't Code § 12940(h))**
**(Against Defendant)**

157. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**17**

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

158. At all times relevant to this Complaint, Defendant was an employer within the meaning of the Fair Employment and Housing Act.

159. At all times relevant to this Complaint, Plaintiff was an employee within the meaning of the Fair Employment and Housing Act.

160. Plaintiff engaged in protected activity by opposing practices forbidden under the Fair Employment and Housing Act, specifically by complaining to Defendant's Human Resources department about sex and race discrimination, harassment, and hostile work environment.

161. Defendant was aware of Plaintiff's protected activity.

162. Following Plaintiff's protected complaints, Defendant took adverse employment actions against Plaintiff, including removing key accounts from her portfolio and terminating her employment.

163. There is a causal connection between Plaintiff's protected activity and the adverse employment actions, as demonstrated by the temporal proximity, Defendant's knowledge of her complaints, and the pretextual nature of Defendant's stated reasons for the adverse actions.

164. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages as set forth above, including severe emotional distress.

165. Defendant's conduct was willful, intentional, malicious, fraudulent, and undertaken with oppression or reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages under California Civil Code section 3294.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

### TENTH CAUSE OF ACTION
**Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of the California Fair Employment and Housing Act**
**(Cal. Gov't Code § 12940(k))**
**(Against Defendant)**

166. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

167. At all times relevant to this Complaint, Defendant was an employer within the meaning of the Fair Employment and Housing Act.

168. At all times relevant to this Complaint, Plaintiff was an employee within the meaning of the Fair Employment and Housing Act.

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

169. California Government Code section 12940(k) requires employers to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring.

170. Defendant failed to take all reasonable steps necessary to prevent the discrimination, harassment, and retaliation that Plaintiff experienced.

171. Despite being notified of Mehdiratta's discriminatory and harassing conduct on multiple occasions beginning in May 2023, Defendant failed to take effective action to stop the misconduct or protect Plaintiff.

172. Defendant promised Plaintiff that it would conduct a mediation process to address her concerns, but failed to follow through on this promise.

173. Defendant failed to discipline Mehdiratta or Mukherjee for their discriminatory and retaliatory conduct.

174. Defendant failed to implement adequate policies, procedures, and training to prevent discrimination, harassment, and retaliation.

175. As a direct and proximate result of Defendant's failure to prevent discrimination, harassment, and retaliation, Plaintiff has suffered and continues to suffer damages as set forth above.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

## ELEVENTH CAUSE OF ACTION
### Retaliation in Violation of the California Family Rights Act
### (Cal. Gov't Code § 12945.7)
### (Against Defendant)

176. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

177. At all times relevant to this Complaint, Defendant was an employer covered by the California Family Rights Act.

178. At all times relevant to this Complaint, Plaintiff was an employee covered by the California Family Rights Act.

179. The California Family Rights Act requires employers to provide eligible employees with up to five days of bereavement leave upon the death of a family member.

180. California Government Code section 12945.2 makes it unlawful for an employer to refuse to hire, discharge, demote, fine, suspend, expel, or discriminate against an individual for exercising the right to bereavement leave.

181. Following the death of her mother, Plaintiff exercised her lawful right to take bereavement leave from May 1 through May 5, 2024.

182. Defendant approved Plaintiff's bereavement leave request.

183. Upon Plaintiff's return from bereavement leave, she was subjected to criticism from her manager Mukherjee about not having one-on-one meetings and lack of communication while she was on protected leave.

184. Approximately six weeks after Plaintiff returned from bereavement leave, and approximately one month after she returned from her mother's death, Defendant terminated Plaintiff's employment.

185. The temporal proximity between Plaintiff's exercise of her right to bereavement leave and her termination demonstrates that her termination was retaliatory.

186. Defendant's termination of Plaintiff's employment constituted unlawful retaliation for exercising her rights under the California Family Rights Act.

187. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages as set forth above.

188. Defendant's conduct was willful, intentional, malicious, fraudulent, and undertaken with oppression or reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages under California Civil Code section 3294.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

a.    For compensatory damages in an amount to be determined at trial, including damages for lost wages, lost benefits, and lost future earnings.

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

b. For damages for emotional distress, humiliation, mental anguish, and loss of enjoyment of life in an amount to be determined at trial.

c. For front pay in lieu of reinstatement in an amount to be determined at trial.

d. For punitive damages in an amount sufficient to punish Defendant and deter future misconduct.

e. For pre-judgment and post-judgment interest at the maximum rate allowed by law.

f. For reasonable attorneys' fees and costs of suit incurred in this action.

g. For such other and further relief as this Court deems just and proper.

DATED: December 15, 2025    HUNTER PYLE LAW, PC


By: /s/ Daniel Brome_____
   Hunter Pyle
   Daniel Brome

Attorneys for Plaintiff Shruti Mangalmurti

21

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: December 15, 2025                    HUNTER PYLE LAW, PC


By: /s/ Daniel Brome_____
    Hunter Pyle
    Daniel Brome

Attorneys for Plaintiff Shruti Mangalmurti

**22**

*MANGALMURTI vs. SYNOPSYS, INC.*
**COMPLAINT AND DEMAND FOR JURY TRIAL**