Docusign Envelope ID: 80E8E639-33A8-893E-8087-2D4FDD56C056

Ronald Holland (SBN CA 148687)
Lindsay Hutner (SBN CA 238998)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Ron.Holland@gtlaw.com
Lindsay.Hutner@gtlaw.com

Attorneys for Defendant
SYNOPSYS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHRUTI MANGALMURTI,<br><br>        Plaintiff,<br><br>v.<br><br>SYNOPSYS, INC. ,<br><br>        Defendant. | CASE NO. 5:25-cv-10694-SVK<br><br>**DECLARATION OF NIKO MEADORS IN SUPPORT OF DEFENDANT′S MOTION TO COMPEL ARBITRATION AND STAY CASE PENDING ARBITRATION**<br><br>Date:    September 29, 2026<br>Time:   10:00 a.m.<br>Dept:   Courtroom 6 – 4th Floor<br><br><br>Action Filed:  December 15, 2025<br>Judge: Hon. Susan van Keulen |

CASE NO. 5:25-cv-10694-SVK

DECLARATION OF NIKO MEADORS IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION

Docusign Envelope ID: 80E8E639-33A8-893E-8087-2D1FDD56C056

## DECLARATION OF NIKO MEADORS

I, Niko Meadors, declare as follows:

1.      I am over the age of 18 and I am competent to attest to the facts set forth herein. I am making this declaration upon my personal knowledge and on the business records of Synopsys, Inc. ("Defendant"). If sworn as a witness, I could and would testify competently as to the facts contained herein.

2.      My current position is Executive Director, HRBP and Global Employee Relations. In my role, I have access to employees' personnel files, and I am familiar with and have knowledge of the onboarding process and internal systems for candidates and newly hired employees, including documents that are executed as part of their application and hiring at Synopsys.

3.      Synopsys hired Plaintiff on or around April 19, 2021, as a Product Solutions Sales Manager, Staff. Attached hereto as Exhibit A is a true and correct copy of Plaintiff's offer letter dated March 4, 2021. Attached hereto as Exhibit B is a true and correct copy of Plaintiff's executed Proprietary Information, Arbitration, and Employment Agreement ("Agreement"), electronically signed by Plaintiff and effective on April 5, 2021. The Agreement contains an arbitration provision.

4.      When employees are hired, they are requested to review and sign all of their onboarding documents. Employees may ask questions about the contents of any document and are not rushed to complete the signing process.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 17, 2026 in Sunnyvale, California.

By
Niko Meadors

DECLARATION OF NIKO MEADORS IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION

# Exhibit A



Synopsys Inc.
690 East Middlefield Road
Mountain View, CA 94043-4010

T. 650.584.5000
www.synopsys.com

March 4, 2021

Shruti Anand

Dear Shruti:

I am pleased to offer you the position of Product Solutions Sales Manager, Staff  with Synopsys, Inc. reporting to John Kouretas, Senior Director, Sales. As a member of the Synopsys team, you'll help shape the future of how the world's hardware designers and software developers create the innovative, high quality, secure products and applications that are increasingly touching everyone, everything, everywhere, every day. As a Synopsys employee, you'll both experience and contribute to the company's values of integrity, leadership and execution excellence which serve as our foundation.

Please review this letter and the following addendum carefully as we request you sign and return this offer letter.

As a new Synopsys employee, you'll be invited to attend New Employee Welcome (N.E.W). In this session you will learn more about the Synopsys culture, vision, values, and the various resources in place to help you succeed in your role at Synopsys. N.E.W. for non-headquarter employees is delivered via WebEx every other Tuesday. Details will be provided as your start date approaches.

Shruti, we look forward to having you join us as a member of the Synopsys team and feel confident that you will be a valuable contributor to the company's future success.  If you have any questions regarding this offer or the enclosed documents, please don't hesitate to contact me by phone (919) 523-3622 or e-mail at tshaw@synopsys.com.

Best wishes for success in your new position.

Sincerely,

Tina Shaw

Tina Shaw
Staffing Specialist

Revised: 12.2020

SPM

Shruti Anand
March 4, 2021
Page 2 of 3

ADDENDUM

Section 1 – Compensation
1.1 Your starting base salary is $170,000.00 per year, subject to applicable taxes and deductions, which will be paid bi-weekly at $6,538.46.

1.2 You will be eligible to participate in the Synopsys Worldwide Sales Incentive Plan, with a target variable compensation of $85,000.00 for the Company's Fiscal Year.  This results in a target annual compensation of $255,000.00 upon achievement of plan.

1.3 As a Product Solutions Sales Manager, Staff, you will also receive a car allowance in the amount of $7,200.00 annually, paid to you in 26 bi-weekly installments with your regular paycheck, subject to all applicable taxes and deductions.

1.4 The Company will recommend that you be granted restricted stock units (RSUs) of Synopsys common stock with a fair market value of $75,000.00. The RSUs shall vest in equal annual increments over three years from your vesting commencement date.  The fair market value of Synopsys equity is determined in accordance with the company's standard policies, and the terms of the equity grant are governed exclusively by Synopsys' standard form of grant agreement and the 2006 Employee Equity Incentive Plan.  You will need to accept the terms of the grant through your E*Trade account in order to be eligible to vest in and retain the grant.

Section 2 – Benefits
2.1 You will be eligible to participate in Synopsys' comprehensive benefits plans which include healthcare and wellness benefits, life insurance, employee stock purchase plan, 401K, time off, and other valuable programs.  Company benefits are outlined in Synopsys' Benefits Info Guide which will be provided upon commencement of your employment.

Section 3 – Federal Immigration Law
3.1 This offer is contingent upon your providing evidence of your legal right to work in the United States. If you are a foreign national requiring work authorization to begin employment, your recruiter will initiate a visa application process with our external immigration law firm. We will pay the legal fees and costs to obtain work authorization for you, as well as non-immigrant visa status for your immediate dependent family members. In the event the Company is not able to obtain work authorization for you within a reasonable period of time, this offer of employment may be withdrawn in its entirety.

Section 4 – General
4.1 This offer is contingent upon the following conditions:

- The return of a signed copy of this offer on or before March 8, 2021.
- The ability to work in a U.S. state where Synopsys is registered to do business. You will be asked to disclose your remote work location for compliance purposes.
- Your ability to provide Synopsys with documents to verify your identity and your legal right to work in the United States. You must present this documentation on your first day of employment.
- The submission of a fully completed Employment Application and Synopsys' obtaining a satisfactory background verification.
- The completion of the Synopsys Employment Agreement and Code of Ethics and Business Conduct.
- The company's ability to secure any and all government authorizations that would be required to lawfully allow access to export controlled technology deemed necessary for this position.

Revised: 12.2020

SPM
DS

Shruti Anand
March 4, 2021
Page 3 of 3

4.2 This offer of employment is one of employment-at-will, which means that the employment relationship is for an indefinite term and either you or the Company may end the employment relationship at any time, for any reason, with or without notice. While other terms and conditions of your employment contained in various policies and programs are subject to change with or without notice, your signature below signifies that you understand that this "at-will" relationship can be changed only by written agreement expressly for that purpose, signed by Aart de Geus, Chairman and co-Chief Executive Officer or Chi-Foon Chan, President and co-Chief Executive Officer, or their appointed designee. Your signature further indicates that you acknowledge and agree that this paragraph constitutes the complete understanding between you and Synopsys on the subject of how and when the employment relationship can be terminated, and supersedes any and all prior discussions, agreements and understanding between you and Synopsys, whether oral, written or implied.

I accept this offer.

DocuSigned by:

*Shruti Mangalmurti*

B8D994F058964D0...

Shruti Anand

March 5, 2021 | 6:15:29 PM PST
_____
Date

04/19/2021
_____
Start Date

Revised: 12.2020

DS
SPM

# Exhibit B

**PROPRIETARY INFORMATION, ARBITRATION, AND EMPLOYMENT AGREEMENT**

The following confirms an agreement between me and Synopsys, Inc., on behalf of itself, its subsidiaries, and its affiliates (hereinafter the "Company"), which is a material part of the consideration for and a condition of my employment by the Company (the "Agreement"). Hereinafter the Company or I may sometimes be referred to singularly as a "Party" or collectively as the "Parties."

1.  <u>Proprietary Information</u>.

    A.  <u>Proprietary Information</u>. I recognize that the Company is engaged in a continuous program of research, development, and production regarding its business, present and future, including confidential fields generally related to its business, and that the Company possesses and continues to possess proprietary and/or confidential information that has been created, discovered, developed, or otherwise become known to the Company (including, without limitation, information created, discovered or developed by, or made known to, me during the period of or arising out of my employment by the Company) and/or in which property rights have been assigned, licensed, or otherwise conveyed to the Company, which information has commercial value in the business in which the Company is engaged in part based on it being kept confidential. All of the aforementioned information is hereinafter called "Proprietary Information." By way of illustration, but not limitation, Proprietary Information includes trade secrets, algorithms, processes, data, know-how, computer software in both source and object form, interfaces, data structures, improvements, inventions, works of authorship, techniques, marketing plans, strategies, forecasts, and customer lists.

2.  <u>Relationship of Trust</u>. I understand that my employment creates a relationship of confidence and trust between me and the Company with respect to any confidential information, including Proprietary Information:

    (i)   applicable to the business of the Company; or

    (ii)  applicable to the business of any client or customer of the Company, which may be made known to me by the Company or by any client or customer of the Company, or learned by me during the period of my employment.

3.  <u>Covenants</u>. In consideration of my at-will employment by the Company and the compensation received by me from the Company from time to time, I hereby agree as follows:

    A.  <u>Ownership; Duty of Non-Disclosure</u>. All Proprietary Information shall be the sole property of the Company, and Synopsys, Inc. and/or its subsidiaries, as the case may be, shall be sole owner of all patents, copyrights, and other rights in connection therewith. I hereby assign to Synopsys, Inc. any rights I may have or acquire in such Proprietary Information. At all times, both during my employment by the Company and after its termination, I will keep in confidence and trust all Proprietary Information or confidential information belonging to a third party entrusted to the Company, and I will not use or disclose such Proprietary Information or third-party confidential information or anything relating to it without the prior written consent of the Company, except as may be necessary in the ordinary course of performing my duties in good faith for the Company in furtherance of the Company's business and in accordance with Company policies.

    B.  <u>U.S. Defend Trade Secrets Act</u>. Notwithstanding the foregoing, the U.S. Defend Trade Secrets Act of 2016 ("DTSA") provides that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (ii) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, the DTSA provides that an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (i) files any document containing the trade secret under seal; and (ii) does not disclose the trade secret, except pursuant to court order.

C.  <u>Ownership; Return of Property</u>. All documents, records, apparatus, equipment and other physical property, whether or not pertaining to Proprietary Information, as well as intangible property, furnished to me by the Company or produced by me or others in connection with my employment shall be and remain the sole property of the Company and shall be returned to the Company immediately as and when requested by the Company. Even if the Company does not so request, I shall return and deliver to the Company all such property upon termination of my employment by me or the Company for any reason, and I will not take with me any such property or any reproduction of such property upon such termination.

D.  <u>Disclosure of Inventions</u>. I will promptly disclose to the Company, or any persons designated by it, all inventions, works of authorship, processes, techniques, know-how, formulae, data, ideas, improvements and other information (including, without limitation, algorithms, interfaces, data structures or software, whether in source or object form) made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the term of my employment, whether or not in the course of my employment and whether or not patentable, copyrightable or protectable as trade secrets (collectively, the "Inventions").

E.  <u>Assignment of Rights and Interest</u>. I acknowledge and agree that any copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and that the Company will be considered the author and owner of such copyrightable works. I agree that all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets of the Company, (ii) result from work performed by me for the Company, or (iii) relate to the Company's business or actual or demonstrably anticipated research and development (the "Assigned Inventions"), will be the sole and exclusive property of the Company. I agree to assign, and do hereby assign, any and all rights I may have or acquire in the Assigned Inventions to the Company. In addition to the foregoing assignment of Assigned Inventions to the Company, I agree to assign, and do hereby irrevocably transfer and assign, to the Company:  (i) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights, including but not limited to rights in databases, in any Assigned Inventions, along with any registrations of or applications to register such rights; and (ii) any and all "Moral Rights" (as defined below) that I may have in or with respect to any Assigned Inventions. I also hereby forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Assigned Inventions, even after termination of my work on behalf of the Company. "Moral Rights" mean any rights to claim authorship of or credit on an Assigned Inventions, to object to or prevent the modification or destruction of any Assigned Inventions, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

F.  <u>Labor Code Section 2870 Notice</u>. I have been notified and understand that the provisions of Section 3(E) of this Agreement do not apply to any Assigned Invention that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states as follows:

(a) ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER:  (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DE-MONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. (b) TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

If I am an employee whose principal work location is in Illinois, Kansas, Minnesota, or Washington state, the foregoing clause does not apply and is replaced by the relevant state law appearing in Appendix A attached to this Agreement. I hereby acknowledge having received and reviewed such notifications.

G.    Assistance. I agree to perform all acts deemed necessary or desirable by the Company to permit and assist it, at the Company's expense, in obtaining, maintaining and enforcing patents, copyrights, mask work rights, trade secret rights, and other legal protections with respect to the Assigned Inventions and/or other Inventions I may at any time assign to the Company in any and all countries. Such acts may include, but are not limited to, execution of documents and assistance or cooperation in legal proceedings or to perfect title in the Company, its nominee or assigns. My obligations under this paragraph will continue beyond the termination of my employment with the Company. The Company may compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance. I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agents and attorneys-in-fact to act for and on my behalf and instead of me, to execute and file any applications or related filings and to do all other lawfully permitted acts to further the prosecution, maintenance and enforcement, issuance of patents, copyrights, trade secret rights, rights with respect to mask works or other rights thereon with the same legal force and effect as if executed by me.

H.    Prior Inventions. I have attached as Appendix B to this Agreement, a list describing all inventions, works of authorship, processes, services, concepts, techniques, know-how, formulae, data, ideas, improvements and other information (including, without limitation, algorithms, interfaces, data structures or software, whether in source or object form) made, conceived, or reduced to practice or learned by me, either alone or jointly with others, which belong to me, which relate in any way to the Company's proposed business, products or research and development, and which are not assigned to the Company (the "Prior Inventions"). If no such list is attached, I represent that no Prior Inventions exist. I further agree that, if I use in the scope of my employment, or incorporate in any product or service of the Company any Prior Inventions that I hereby grant the Company a nonexclusive, royalty-free, perpetual, irrevocable, assignable, worldwide license to make, have made, import, sell, modify and create works based on, use, copy, distribute, import, and perform or display such Prior Inventions for any purpose and to sublicense third parties with the same rights.

I.    Efforts; Duty Not to Compete During Employment. I understand that my employment with the Company requires my undivided attention and effort. As a result, during my employment, I will not, without the Company's express written consent, engage in any other employment or business that (i) directly competes with the current or future business of the Company; (ii) uses any Company information, equipment, supplies, facilities or materials; or (iii) otherwise conflicts with the Company's business interest or causes a disruption of its operations.

J.    No Solicitation of Employees. During my employment with the Company and for one (1) year following the termination of my employment, I shall not, either directly or indirectly, solicit or in any way encourage any employee of the Company to leave the employee's employment with the Company for any reason, or to otherwise engage in any activity calculated to have such a result.

K.    Non-Solicitation of Suppliers/Customers. During and after the termination of my employment with the Company, I will not directly or indirectly solicit or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any trade secrets or Proprietary Information of the Company. I agree that the non-public names and addresses of the Company's customers and suppliers, and all other confidential information related to them, including their buying and selling habits and special needs, created or obtained by me during my employment, constitute trade secrets or Proprietary Information of the Company.

L.    No Breach of Prior Obligations. I represent and warrant that I have listed in Appendix B all agreements, if any, with a current or former employer, client, or any other person or entity, that may restrict my ability to accept employment with the Company or my ability to recruit or engage customers or service providers on behalf of the Company, or otherwise relate to or restrict my ability to perform my duties for the

Company or any obligation I may have to the Company. If no such list is attached, I represent that my performance of all the terms of this Agreement will not breach any invention assignment, proprietary information, confidentiality, or similar agreement with any former employer or other party, and that execution of this Agreement, my employment with the Company, and my performance of my proposed duties to the Company in the development of its business will not violate any obligations I may have to my former employer or other party. I have not entered into, and I agree I will not enter into, any agreement, either written or oral, in conflict herewith. I represent that I will not bring with me to the Company or use in the performance of my duties for the Company any documents, materials, or intangibles of a former employer or third party that are not generally available to the public or have not been legally transferred to the Company.

4.    At-Will Relationship. I understand that my employment by Synopsys is for an indefinite term and on an "at-will" basis. This means that either I or Synopsys may terminate the employment relationship at any time, with or without cause, and with or without notice. I understand this "at-will" relationship may be changed only by a written agreement entered into specifically for that purpose and signed by either of the Company's Chief Executive Officer(s) and me. I also understand that other terms and conditions of my employment will be governed by various policies and programs of the Company, in writing and otherwise, and that those policies and programs may be changed from time to time by the Company in its sole discretion, but that the "at-will" nature of my employment shall not be affected or changed by any other employment policies or programs the Company may have, now or in the future.

5.    No Expectation of Privacy in Electronic Resources or Workspaces. I acknowledge that I have no right of personal privacy with respect to the Company's electronic resources, which include but are not limited to all networking, computing, telephonic, and other electronic systems to which I may be given access in connection with my employment, nor do I have any right of personal privacy in any workspace within the Company's facilities. This means that the Company can access, monitor or search any such electronic resource or workspace at any time, with or without cause or notice.

6.    Dispute Resolution. As explained in more detail below, in case of a dispute between them regarding a Claim (as defined below), the Parties agree to engage in alternative dispute resolution ("ADR"), meaning they agree to submit such disputes first to mediation and then, if necessary, to binding arbitration.

    A.    ADR Administration.

        (i)    Claims Covered. The term "Claim" or "Claims" as used in this Section 6 means any legal or equitable dispute, claim, or controversy arising out of, relating to, or connected to my employment with, or separation from, the Company, except as to such matters set forth below:

            1.    Excluded Claims. This ADR provision (Section 6) does not apply to claims for workers' compensation and state unemployment or disability insurance benefits, and any other claims that the Parties cannot lawfully agree to arbitrate.

            2.    Agency Claims. Per Section 6(C), I am required to exhaust administrative remedies, and nothing in this Agreement prohibits me from pursuing an administrative claim with a local, state, or federal administrative body or government agency that is authorized to enforce or administer laws related to employment, including but not limited to the Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, and the Workers' Compensation Board. This Agreement does, however, preclude me from receiving monetary damages for any Claim resolved by an administrative body or government agency.

            3.    Injuctive Relief. This agreement to arbitrate does not cover any action seeking only emergency, temporary or preliminary injunctive relief (including a temporary restraining order) in a court of competent jurisdiction in accordance with applicable law.

4.    <u>Arbitrability</u>. Any dispute over arbitrability of a claim shall be decided by a court and not an arbitrator.

(ii) <u>Forum</u>. All mediations and arbitration hearings, as the case may be, shall be conducted in Santa Clara County, California (or the state in which I reside if it is not California, unless the Parties mutually agree to a different venue) before JAMS.

(iii) <u>ADR Service</u>. The Parties agree that a single mediator or arbitrator selected upon mutual agreement of the Parties will mediate or arbitrate, as the case may be, applying the then-current JAMS employment rules, procedures, or guidelines (the "JAMS rules"), except where the JAMS rules conflict with this Agreement. If JAMS cannot administer ADR, then the arbitrator or mediator will apply the JAMS rules to the extent practicable, or other rules or procedures that the Parties mutually agree to use. I undertand that if I am unable to access or print the JAMS rules, which are currently available at https://www.jamsadr.com/, I may obtain a printout of the JAMS rules from my Human Resources representative.

(iv) <u>Fees and Costs</u>. The Company will pay costs associated with mediation or arbitration services, as the case may be, less those amounts I would otherwise be required to pay were my claims litigated in a court of law. Each Party will pay its own costs and attorneys' fees, if any, except as such costs and fees are included in a settlement agreement, or as part of an arbitration award to the prevailing Party.

(v) <u>Statutes of Limitations</u>: All Claims are governed by the applicable statute of limitations.

B.    <u>Mediation</u>. The Parties agree to mediate all Claims. However, the Parties may mutually agree in writing not to mediate any specific Claim(s). To initiate mediation, the initiating Party must send a written Notice of Claim(s) to the other Party with a brief statement of the nature of the dispute. The mediator will not decide the merits of the dispute. The mediation will be confidential. Statements related to mediation will be considered statements during settlement negotiations and will not be discoverable or admissible in any subsequent proceedings. The Parties agree to complete mediation within four months of the Notice of Claim(s). The applicable statute of limitations will be tolled while the parties engage in mediation, which means the time period between the Notice of Claim(s) and the mediation session will not be counted in determining the applicability of any statute of limitations for submitting a Claim to arbitration.

C.    <u>Arbitration</u>. Arbitration is the referral of a dispute to a neutral arbitrator (instead of a court or jury) for a binding decision. In the event mediation of a Claim (as defined in Section 6(A) above) is unsuccessful or the Parties mutually agree not to mediate a particular Claim, the Parties agree the dispute shall be handled through binding arbitration.

(i) <u>Requirement to Exhaust Benefit Plan Before Arbitration</u>. In the case of a Claim for denial of benefits under any Company-administered benefits plan or other dispute concerning such benefits, benefit-plan claim filing and appeals procedures must be utilized and exhausted before any arbitration is commenced.

(ii) <u>Requirement to Exhaust Administrative Remedies Before Arbitration</u>. Nothing in this Agreement excuses either Party from bringing an administrative claim before a state or federal agency in order to fulfill the Party's obligation to exhaust administrative remedies before making a Claim in arbitration.

(iii) <u>No Class/Collective Actions</u>. The Parties agree that all Claims must be submitted to arbitration on an individual basis only. The Company and I waive any right to bring a Claim on behalf of persons other than ourselves or to otherwise participate with other persons in any class, collective, or representative action ("Class Action Waiver"). An arbitrator shall not have authority to consolidate claims or consider individual claims collectively on any grounds. To the extent a court holds in a final judgment that the Class Action Waiver is unenforceable as to any particular Claim(s), the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other Claims, and the Claim(s) to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable

Claims. This Class Action Waiver shall not apply to California Private Attorney General Act ("PAGA") claims brought against the Company to the extent a class action waiver is not legally enforceable as to those claims.

(iv) <u>Choice of Law</u>. The arbitrator shall apply the substantive law applicable to the Claims.

D.    BY SIGNING BELOW, THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY COURT OR JURY IN REGARD TO ANY CLAIMS.

7.    <u>Heirs and Successors</u>. This Agreement shall be binding upon me, my heirs, executors, assigns and administrators and shall inure to the benefit of the Company, its successors and assigns. The Company may assign any of its rights and obligations under this Agreement. I may not assign, whether voluntarily or by operation of law, any of my rights and obligations under this Agreement, except with the Company's prior written consent.

8.    <u>Waiver</u>. I understand and agree that no waiver of any provision of this Agreement shall be of any force or effect unless made pursuant to a writing executed by the Company's General Counsel.

9.    <u>Severability</u>. If for any reason a court of competent jurisdiction finds any provision of this Agreement, or portion thereof, to be unenforceable, that provision of the Agreement will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

10.    <u>Choice of Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the United States and the State of California, without regard to its choice of law provisions. The agreement to arbitrate is covered by the Federal Arbitration Act, 9 U.S.C. §1 *et seq*. ("FAA").

11.    <u>Entire Agreement; Modification</u>. This Agreement reflects the full and final agreement regarding its subject matter, and there are no other agreements on these subjects. This Agreement supersedes any prior agreements, written or oral, regarding these subjects. Except for the at-will provision, as explained in Section 4, no modifications of this Agreement shall be effective unless such modification is either: (i) contained in a written agreement signed by me and the General Counsel of the Company; or (ii) made unilaterally by the Company and provided to me upon reasonable notice.

12.    <u>Acknowledgment of Voluntary Agreement</u>. By signing below, I acknowledge that I have carefully read and understand this Agreement and enter into it voluntarily and free from any duress or coercion.

13.    <u>Effective Date</u>. This Agreement shall be effective as of the date I sign this agreement ("Effective Date").

On behalf of the Company:

Digitally signed by: Shruti Parmanand Mangalmurti on 04/05/2021
_____
Employee Signature

Digitally signed by: Conni Nguyen on 04/19/2021
_____
Signature

Shruti Parmanand Mangalmurti
_____
Print Name

Conni Nguyen
_____
Print Name

04/05/2021
_____
Date

CORPORATE REPRESENTATIVE
_____
Title

04/19/2021
_____
Date

**APPENDIX A**
**TO**
**AGREEMENT**


### Notice for Illinois Employees

In accordance with Section 1060/2(3) of the Illinois Code, the foregoing assignment provisions in this Agreement do not apply to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the Company.


### Notice for Minnesota Employees

In accordance with Section 181.78(3) of the Minnesota Statute, the foregoing assignment provisions in this Agreement do not apply to an invention for which no equipment, supplies, facility or trade secret information of the Company was used and which was developed entirely on the employee's own time, and (1) which does not relate (a) directly to the business of the Company or (b) to the Company's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by the employee for the Company.


### Notice for Kansas and Washington State Employees

In accordance with Section 44-130 of the Kansas Statute and Section 49.44.140(3) of the Washington State Code, the foregoing assignment provisions in this Agreement do not apply to an invention for which no equipment, supplies, facility or trade secret information of the Company was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the Company.